**In the United States District Court
for the District of Kansas**

---

**United States of America**,
            Plaintiff,

v.                                                     Case No. 22-20011-HLT

**Dawna Kellogg**,
            Defendant.

---

**Sentencing Memorandum**

---

    "We all have our reasons. Sometimes we're fractured by the choices we make; sometimes we're shattered by things we would never have chosen. But our brokenness is also the source of our common humanity, the basis for our shared search for comfort, meaning, and healing. Our shared vulnerability and imperfection nurtures and sustains our capacity for compassion."

                            — Bryan Stevenson

    Dawna Kellogg will be making amends for her crime against the Johnson County District Court for the rest of her life. That is how long it will take to chip away at the mountain of loss she created when she decided to steal from her employer. In the span of about eight years—a period of her life that is a striking contrast to the remaining 50-plus years—Dawna made a succession of bad decisions in attempt to salvage a marriage that was mentally, emotionally and sometimes physically abusive. With each withdrawal from Court funds, she dug herself deeper into a hole that she ultimately felt she could not correct. The loss to the Court is over a million dollars. The only way to repair the harm to the Court and piece

1

together her dignity is for Dawna to accept responsibility for her actions and to pay the money back.

Ms. Kellogg, by and through her attorney, Laquisha Ross, Assistant Federal Public Defender for the District of Kansas, provides the following sentencing memorandum. Dawna requests the Court impose a sentence of five years' probation with a condition of home confinement for one year and orders of restitution to the Johnson County District Court, the Internal Revenue Service (IRS) and the State of Kansas in accordance with the terms of her plea agreement. Ms. Kellogg sets out her reasoning for this request by focusing on the 18 U.S.C. § 3553(a) factors below.

## I. Consideration of 18 U.S.C. § 3553(a) factors

The sentence this Court imposes for Ms. Kellogg's crime should be "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). A review of the § 3553(a) factors support a probationary sentence with a condition for home confinement.

### A. The nature and circumstances of the offense and the history and characteristics of Ms. Kellogg.

#### 1. Nature and circumstances of the offense.

Dawna Kellogg's offense involved fraud that resulted in the loss of a substantial sum of money to the Johnson County District Court. She committed this offense while employed as an Accounting Supervisor in the Clerk of Court's office, and she did so over an eight-year period (2010-2017). In an effort to make things right, she has agreed to pay full restitution of $1,135,988.13 which reflects the total loss to the

court over a 10-year period (2007-2017). Ms. Kellogg was a trusted employee who used her access to and knowledge of the court's financial systems to conceal her crime. Moreover, she failed to report these illegal financial gains to the IRS and the State of Kansas. Accordingly, she has agreed to pay restitution to the IRS in the amount of $87,886.00, and $20,893.00 to Kansas.

While it does not excuse her conduct in this case, Ms. Kellogg hopes the Court will take into consideration her lack of previous involvement with the criminal justice system, her swift acceptance of responsibility, the momentum she has gained in establishing employment post-guilty plea, her ability to work to repay the undisputed restitution amount, and the value she adds to both her family and her community. The stressors that motivated the theft were born out of a brokenness that Dawna has since overcome. Dawna is truly remorseful for her crime and is committed to never engaging in criminal conduct again.

**2. History and characteristics of Ms. Kellogg**

Ms. Kellogg is a 61-year-old mother of two adult children and grandmother of two. She has been in a loving, healthy relationship with her husband, Robert, for almost two years.[1] Dawna is a lifetime resident of Kansas. She is a dedicated wife, daughter, mother and "Memaw" who plays a vital role in the lives of her children, grandchildren and elderly parents. In a compilation of letters from family and friends, this Court will learn that the people who know Dawna Kellogg best describe

---

1  Doc.16 at 19.

her as a kind, compassionate and loving friend/family member.[2] She is a valued member of her community who volunteers with the Combat Veterans Motorcycle Association and the kind of person who will go out of her way to do something nice for a neighbor.[3] Two common themes run through the requests for leniency on Ms. Kellogg's behalf. The first is that Dawna Kellogg's remorse for her crimes weighs heavily on her. The second is the commission of this crime was completely out-of-character for Ms. Kellogg.

Ms. Kellogg does not offer excuses for criminal conduct, but she does want the court to understand her state of mind during this period in her life when she acted outside of character. Dawna spent over three decades of her life married to her ex-husband. Near the last decade of the marriage, her relationship with her ex-husband became increasingly toxic and emotionally exhausting. Though Dawna felt constrained financially and endured constant verbal abuse, she presented to the public as if everything was fine. She somehow believed that living a life she could not afford would save her marriage. During this time, Ms. Kellogg also suffered the loss of her sister to cancer. Her marriage was so suffocating that she was not allowed the space to grieve. In 2016, Dawna decided that she could no longer endure being spat in the face and grabbed by throat at the hands of her ex-husband. She left him and filed for divorce the following year. This step in her life presented even more financial challenges she was not equipped to handle, and she continued her

---

2 *See* Exhibit 1, Character Letters.
3 *Id.*

crimes until she no longer worked for the Court. Dawna sincerely regrets the decisions she made during this time in her life and will express this sentiment in more detail to the court at sentencing.

**B. The need for the sentence to reflect the seriousness of the offense, deter criminal conduct, and protect the public.**

**1. The seriousness of the offense**

Dawna Kellogg's crimes have the drawn the attention of the media and members of the Kansas Judiciary because she was an employee of the Clerk of Court. Undoubtedly the most critical factor driving her guidelines and generating public interest is the $1.135 million loss to the Johnson County District Court.

 This loss is tremendous, but imposing a custodial sentence would do nothing to alleviate the loss or repair the harm. In fact, it would have the opposite effect of delaying or at least severely limiting Dawna's ability to make restitution. Imposing a probationary sentence with a condition for home confinement instead would sufficiently punish Ms. Kellogg while allowing her to maximize the amount of restitution she could repay from her earned income. Moreover, the maximum allowable term of probation under the law is five years.[4]  That is two more years of supervision than would otherwise be authorized under a term of supervised release. This lengthier term of supervision would provide a mechanism by which this Court could enforce payment of restitution and monitor Ms. Kellogg's financial circumstances in accordance with the proposed special conditions of supervision.

---

4  Doc. 16 at 26.

## 2. The need to deter criminal behavior and protect the public

Dawna's criminal history is nonexistent. Her Presentence Investigation Report (PSR) indicates no prior contact with law enforcement, no pending charges, no prior adult or juvenile convictions or even a single traffic ticket.[5] For at least 50 years of her life, Dawna has been a law-abiding citizen and a contributing member of society. Perhaps the best assessment of the Court's need to protect the public from Dawna Kellogg is the status of her pretrial supervision. After appearing before a U.S. Magistrate Judge on March 28, 2022, for an initial appearance, the Court released Ms. Kellogg on unsupervised bond.[6] The PSR writer reported no violations of pretrial release.[7] Over the last five years, the record reflects Dawna's return to a law-abiding lifestyle.

The PSR's special conditions of supervision adequately address any concerns regarding the need to protect the public in the future. The proposed conditions would ensure that the U.S. Probation Office (USPO) approves any job in which Ms. Kellogg might have discretionary authority over financial matters. While under supervision, she would not be able to incur new credit charges or open any lines of credit without USPO's approval. She would also have to immediately provide USPO access to any and all requested financial information.[8]

---

5 *Id.* at 17.
6 *Id.* at 4.
7 *Id.* at 5.
8 *Id.* at 26-27.

Dawna pled guilty within a month of the government filing charges in this case. As a result of the federal conviction that will forever stain her criminal record and tarnish her professional reputation, Ms. Kellogg has lost some of the basic civil rights that we enjoy as United States citizens. She will no longer have the right to vote, to serve on a jury or to bear arms.

The gravest, and arguably the most important, challenge Dawna Kellogg must overcome is the financial restoration to the Johnson County District Court. Paying back the money she stole could easily take the rest of her life. Although Dawna is approaching retirement age, she understands that paying back her debt means forfeiting the ability to retire in the next stage of her life. She is fully committed to working to pay restitution notwithstanding the handicap of a felony conviction involving her former workplace. Dawna lost her job as a project coordinator at Kiewit Engineering after her employer learned of the charges in this case. Last month, she started a new job at an orchard in Williamsburg, KS. She also hopes to begin a second job at her local library later this month. In the meantime, she is volunteering at the library in preparation for this position. The compensation for these jobs is less than what she made at the Clerk's office or Kiewit, but these employers were willing to give Dawna a second chance at doing meaningful work and earning an honest living.

### 3. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

In this case, imposing a guideline sentence would promote unwarranted

sentence disparities among those, like Dawna, who are sentenced under USSG § 2B1.1 with a criminal history category I. The average sentence imposed for theft, property destruction, and fraud offenses generally in 2021 was 21 months.[9] For those convicted under USSG §2B1.1 who were also scored as criminal history category I (like Ms. Kellogg) during the last five-years (2017-2021), over 76% of people received a sentence of less than 24-months. Only 16.3% received a sentence of 24 to 59 months and only 5.6% of people received a sentence from 60 to 119 months. Less than 2% of people were sentenced to a sentence of 120-months or more.[10]



---

9  United States Sentencing Commission, *Quick Facts: Theft, Property Destruction, and Fraud Offenses* (2021), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY21.pdf.
10  United States Sentencing Commission, *Interactive Data Analyzer*, (accessed August 31, 2022), available at: https://ida.ussc.gov/analytics/saw.dll?Dashboard.

8

Narrowing the focus to those sentenced in the Tenth Circuit only shows that over 85% of those sentenced who were sentenced under the same guideline and criminal history as Dawna received a sentence of less than 24-months.[11]



Further narrowing the data to the District of Kansas shows that nearly 90% of those sentenced under the same guideline and criminal history as Ms. Kellogg received a sentence of less than 24-months.[12]

---

11 *Id.*
12 *Id.*



Though most Kansas defendants received sentences up to 24 months, we cannot assume that a sentence under 24 months was a reflection of guideline calculations in that range. In fact, the data from 2015 to 2021 shows that a significant percentage of District of Kansas fraud cases resulted in sentences below the calculated Guidelines range.[13] For example in 2021, 42.1% of sentences fell under the Guidelines.  In 2018, the percentage of below-guideline sentences was 60.7%.

---

13 United States Sentencing Commission, *Interactive Data Analyzer*, (accessed September 12, 2022), available at: https://ida.ussc.gov/analytics/saw.dll?Dashboard.





Sentences Under the Guidelines Manual and Variances Over Time
Fiscal Year 2015,2016,2017,2018,2019,2020,2021

The figure includes the 264 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure.
FILTER:
Fiscal Year: 2015,2016,2017,2018,2019,2020,2021; Circuit: 10th Circuit; State: Kansas; District: All; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: Fraud/Theft/Embezzlement; Guideline: §2B1.1; Drug Type: All; Criminal History: I; Career Offender Status: All

Furthermore, imposing a probationary sentence in a fraud case where the Defendant has no criminal history is not an anomaly in the District of Kanas. Specifically, fraud cases in the District of Kansas during Fiscal Year 21 resulted in 47.4% of defendants receiving a sentence of probation only. Another 5.3% of defendants received a sentence of Probation plus conditions of confinement.[14]

---

14 United States Sentencing Commission, *Interactive Data Analyzer*, (accessed September 12, 2022), available at: https://ida.ussc.gov/analytics/saw.dll?Dashboard.



## Conclusion

Based on the § 3553(a) factors discussed above, Ms. Kellogg requests this Court sentence her to five years' probation with a condition of home confinement for one year. Such a sentence would place Ms. Kellogg in the best position to repair the harm she caused to the Johnson County District Court and the State of Kansas. It would reflect the seriousness of Ms. Kellogg's offenses while taking into consideration her characteristics including her lack of criminal history, her ability to work toward paying restitution, the marital stress that contributed to the offense conduct and her acceptance of responsibility.

This sentence is consistent with §3553(a) and would not be greater than necessary to achieve its ends.

Respectfully submitted,

s/ Laquisha Ross
Laquisha Ross, #26834
Assistant Federal Public Defender
For the District of Kansas
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Telephone (913) 551-6944
Fax: (913) 551-6562
Email: laquisha_ross@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

s/ Laquisha Ross
LAQUISHA ROSS, #26834